IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN JOSE MORALES,<br><br>　　　　Petitioner,<br><br>　v.<br><br>P. D. BRAZELTON, Warden,<br><br>　　　　Respondent. | No. C 11-06656 EJD (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction from Sonoma County Superior Court. For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

## BACKGROUND

Petitioner was found guilty by a jury of three counts of possession of firearm by a felon (Pen. Code § 12021, subd. (a)(1))[1]; two counts of possession of ammunition by a felon (§ 12316, subd. (b)(1)); attempting to evade a police officer (Cal. Veh. Code § 2800.2, subd. (a)); misdemeanor resisting and obstructing a police

---

[1] All further unspecified statutory references are to the California Penal Code.

Order Denying Petition; Denying COA
P:\PRO-SE\EJD\HC.11\06656Morales_denyHC.wpd

1  officer (§ 148, subd. (a)(1)); child abuse likely to create great bodily harm (§ 273a,
2  subd. (a)); assault with a firearm (§ 245, subd. (a)(2)); shooting at an inhabited
3  dwelling (§ 246); and first degree burglary (§ 459). The jury also found true various
4  enhancements. Petitioner was sentenced to state prison for 10 years plus 25 years to
5  life on September 16, 2006.

Petitioner appealed his conviction. On November 26, 2008, the California Court of Appeal, in a published opinion, reversed the conviction for shooting at an inhabited dwelling, and remanded the case for resentencing; judgment was affirmed in all other respects. (Ans. Ex. B.) Upon remand, the trial court appointed new counsel to represent Petitioner, and resentenced Petitioner to 24 years and eight months in prison on May 28, 2009. (Id., Ex. D, Reporter's Transcript ("RT") at 3, 9-11.) The state appellate court affirmed the judgment. (Id., Ex. G.) The California Supreme Court denied review on March 17, 2011. (Id., Ex. I.)

Petitioner also filed a petition for a writ of habeas corpus in the state appellate court, which denied the petition on December 30, 2010. (Id., Ex. M.) Petitioner sought review in the state high court, which denied the petition on March 17, 2011. (Id., Ex. O.)

Petitioner filed the instant federal habeas petition on December 27, 2011.

**FACTUAL BACKGROUND**

The following facts are taken from the opinion of the California Court of Appeal, affirming the judgment when Petitioner appealed the trial court's re-sentencing on remand:

**I. BACKGROUND** [FN1]

> FN1. Our discussion of the facts will quote extensively from our published decision in *Morales I* to explain the background of this case. Bracketed materials within quotations from that decision indicate additions to the language of *Morales I*.
>
> A jury found [Petitioner] guilty of "possession of a firearm by

Order Denying Petition; Denying COA
P:\PRO-SE\EJD\HC.11\06656Morales_denyHC.wpd       2

a felon (Pen. Code, [FN2] § 12021, subd. (a)(1)) (counts I, V, and XII); possession of ammunition by a felon (§ 12316, subd. (b)(1)) (counts II and VI); attempting to evade a police officer (Veh. Code, § 2800.2, subd. (a)) (count III); misdemeanor resisting and obstructing a police officer (§ 148, subd. (a)(1)) (count IV); child abuse likely to create great bodily harm (§ 273a, subd. (a)) (count VII); assault with a firearm (§ 245, subd. (a)(2)) (count IX); shooting at an inhabited dwelling (§ 246) (count X); and first degree burglary (§ 459) (count XI). Various enhancement allegations were also found true. [Petitioner] was [originally] sentenced to 10 years plus 25 years to life in prison." [*People v. Morales* (2008) 168 Cal.App.4th 1075, 1078 (*Morales I*).]

> FN2. All undesignated statutory references are to the Penal Code.

The charges arose out of three incidents. The first took place on August 4, 2004, the day after Rhonda Oliva had given birth to his son. [FN3] [Petitioner] was visiting Oliva at the hospital, and the two had a "big fight." A security officer was called, and found the room in disarray, with a food tray table and other furniture knocked over and bed sheets thrown to the floor. The officer escorted [Petitioner] out of the hospital, and [Petitioner] told him he wanted to retrieve a gun from Oliva's car, saying it belonged to a friend. A police officer searched the car and found a loaded semiautomatic pistol under the driver's seat.

> FN3. Because the facts of this incident were not germane to the issues on appeal in *Morales I*, we did not recite them there. (*Morales I*, *supra*, 168 Cal.App.4th at p. 1079, fn. 4.) We take judicial notice of the appellate record in *Morales I*.

The second incident took place on November 17, 2004, when "[Petitioner] was driving a car with 16-year-old Kayla in the passenger seat. Police Officer Richard Celli of the Santa Rosa Police Department saw that the car had expired registration tags. He put on his overhead lights and siren to signal [Petitioner]'s car to pull over. The car signaled to the right but continued on the road. Celli pursued [Petitioner], who evaded him and sped through a stop sign without stopping. After going through a red light, [Petitioner]'s car collided with a telephone pole, spun around, and hit a metal post." (*Morales I*, *supra*, 168 Cal.App.4th at p. 1078), fn. omitted.) A loaded .380 caliber pistol magazine was found in the driver's door pocket, and a loaded .380 semi-automatic pistol and magazine were found nearby.

The third incident occurred on November 23, 2004. "Rhonda Oliva and Sebastian Fent were at Oliva's home, along with Oliva's three-month-old baby, [Petitioner]'s son. In the middle of the night, [Petitioner] began banging on the front door, tearing off the screen door. He moved to the bedroom window and tore at the window screen while yelling. Fent called 911[, and Oliva took him to the garage to get something to protect himself. Fent got a bat from the garage], then went into the kitchen and locked the door between the kitchen and the garage. Fent heard a crash or bang in the garage, and

> [Petitioner] began pounding on the door leading from the garage to the kitchen . He fired three or four shots through the kitchen door. Two of the shots hit Fent's legs." (*Morales I*, *supra*, 168 Cal.App.4th at pp. 1078-1079, fns. omitted.)  [Petitioner] later told a police officer that he was concerned that Oliva was not feeding his son, went into the garage to find a bat, and found a gun there.  He said that after the incident, he threy  it into a field. [FN4]
>
> FN4. A gun was found in a nearby field.
>
> In *Morales I*, we concluded [Petitioner]'s actions in the November 23, 2004, incident did not meet the elements of section 246, shooting at an inhabited dwelling, reversed count X, and remanded the matter for resentencing.  (*Morales I*, *supra*, 168 Cal.App.4th at pp. 1079-1082, 1085.)
>
> On remand, the trial court sentenced [Petitioner] to a total prison sentence of 24 years and eight months.  On count IX, assault with a firearm (§ 245, subd. (a)(2)), it imposed the upper term of four years, with a three-year enhancement for infliction of great bodily injury (§ 12022.7, subd. (a)), a 10-year enhancement for personal use of a firearm (§ 12022.5, subds. (a)-(d)), and a two-year out-on-bail enhancement (§ 12022.1).  The court imposed an eight-month sentence (one-third the midterm) on count I; a concurrent three-year term on count V; a consecutive sentence of one year and four months (one-third the midterm) on count VII, with a two-year out-on-bail enhancement (§ 12022.1); a consecutive eight month sentence (one-third midterm) on count XII; and a one-year enhancement under section 667.5, subdivision (b), for a prior prison term.  The court stayed sentence on counts II, III, and IX pursuant to section 654.

(Ans. Ex. G at 1-3.)

## DISCUSSION

I.  Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last

reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court considering a petitioner's claims, the court "looks through" to the last reasoned opinion. See Ylst, 501 U.S. at 805.

The Supreme Court has vigorously and repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions. See Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam); Harrington v. Richter, 131 S. Ct. 770, 783-85 (2011); Felkner v. Jackson, 131 S. Ct. 1305 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Id. at 1307 (citation omitted). With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claims.

C.   Claims and Analysis

As grounds for federal habeas relief, Petitioner claims that he received ineffective assistance of counsel at his resentencing hearing. The trial court appointed counsel to represent Petitioner, when his original trial attorney was unavailable. Petitioner claims that his newly appointed attorney failed to provide letters in support of a more lenient sentence, and erroneously told the trial court that the strike enhancements were mandatory.[2]

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of

---

[2] Petitioner also generally claims that his attorney failed to communicate with him prior to sentencing. (Pet. at 6.) However, he presents no specific facts to support this claim or explain how counsel's alleged failure resulted in prejudice. Furthermore, it does not appear that he exhausted this general claim in state court. (See Ans. Exs. E and J.) Accordingly, the Court will not address the merits of this claim.

1  reasonableness" under prevailing professional norms. Strickland v. Washington,
2  466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by
3  counsel's deficient performance, i.e., that "there is a reasonable probability that, but
4  for counsel's unprofessional errors, the result of the proceeding would have been
5  different." Id. at 694. A reasonable probability is a probability sufficient to
6  undermine confidence in the outcome. Id. A court need not determine whether
7  counsel's performance was deficient before examining the prejudice suffered by the
8  defendant as the result of the alleged deficiencies. Id. at 697; Williams v. Calderon,
9  52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (applauding district court's refusal to
10 consider whether counsel's conduct was deficient after determining that petitioner
11 could not establish prejudice), cert. denied, 516 U.S. 1124 (1996).

12       The Strickland framework for analyzing ineffective assistance of counsel
13 claims is considered to be "clearly established Federal law, as determined by the
14 Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d)
15 analysis. See Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011); Williams (Terry)
16 v. Taylor, 529 U.S. 362, 404-08 (2000). A "doubly" deferential judicial review is
17 appropriate in analyzing ineffective assistance of counsel claims under § 2254. See
18 Pinholster, 131 S. Ct. at 1410-11; Harrington v. Richter, 131 S. Ct. 770, 788 (2011)
19 (same); Premo v. Moore, 131 S. Ct. 733, 740 (2011) (same). The general rule of
20 Strickland, i.e., to review a defense counsel's effectiveness with great deference,
21 gives the state courts greater leeway in reasonably applying that rule, which in turn
22 "translates to a narrower range of decisions that are objectively unreasonable under
23 AEDPA." Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) (citing
24 Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the
25 question is not whether counsel's actions were reasonable. The question is whether
26 there is any reasonable argument that counsel satisfied Strickland's deferential
27 standard." Harrington, 131 S. Ct. at 788.
28 ///

### 1. Failure to Provide Letters in Support

Petitioner claims that counsel failed to discuss and provide the sentencing court with letters from Petitioner and his family in support of a more lenient sentence.[3] (Pet. 6.) Respondent asserts that this claim is factually contradicted by counsel's declaration that she never received such letters, (Ans. Ex. K, Ex, A), and that even if such letters had been provided to the sentencing court, it was not likely that Petitioner would have received a lighter sentence.

Assuming Petitioner's factual allegations are true and that he provided counsel with such letters, it cannot be said that the result of the proceedings would have been different but for counsel's failure to include them with her statement of mitigation. Counsel presented a nine-page statement of mitigation on Petitioner's behalf, arguing that probation should be granted because this was an "unusual case" under California Rules of Court, Rule 4.413(b). (Ans. Ex. C at 46.) Counsel argued that Petitioner committed the November 24, 2004, offenses under "extreme provocation and duress" because he believed that his son and his son's mother were in danger with the presence of a strange man in their home late at night. (Id.) Counsel also emphasized Petitioner's young age – he was only 24 years old at the time – and that he had no significant record of prior criminal offenses other than two convictions for non-violent property crimes. (Id.) Counsel argued that imprisonment would adversely affect Petitioner and his two children, that imprisonment would severely limit future employment, that Petitioner was remorseful, and that the likelihood of him posing a danger to others was "extremely slim" because the offenses arose out of a "unique set of circumstances, unlikely to occur again." (Id. at 47.) Counsel pointed out that Petitioner also exercised caution to avoid harm to person or damage to property by aiming the gun low, that his past record of criminal conduct was insignificant, and that Petitioner had successfully

---

[3] Petitioner presented this claim in his state habeas petition, which was summarily denied by the state appellate and high courts. (Ans. Exs. M & O.)

1  completed a grant of parole in 2002. (Id. at 49.) Counsel also urged the court to
2  consider that Petitioner had never received treatment for his drug abuse or anger
3  management issues. (Id. at 50.) This lengthy and detailed statement appears to
4  present a thorough argument that mitigating factors outweigh aggravating factors.

5        Nonetheless, assuming that counsel erred in failing to include the letters,
6  Respondent argues that Petitioner was not prejudiced by the failure because the
7  letters were not truly mitigating. (Ans. at 16.) Petitioner's sister, Diana Morales,
8  wrote that Petitioner was a loving family member who "made a bad choice" and was
9  "paying for everything he chose to do." (Ans. Ex. J at Ex. 2, Ex. A at 1.) She stated
10 that if Petitioner was given another chance, "he will not come back to this country
11 he is planning to go to Mexico to get a job and just staying over there." (Id.)
12 Petitioner's cousin, Luz Enriquez, wrote that Petitioner had "made a mistake and is
13 paying for it," and that she was praying and hoping that his sentence would be
14 reduced. (Id. at 3.) A friend named Juan Pierdant wrote that Petitioner was a "very
15 good boy" with a "very big, strong and united family"; he stated that Petitioner had
16 written letters sharing his experiences and "things that he has learned and his future
17 goals," and that he is "someone you can trust again." (Id. at 4.) Petitioner's
18 nephew, Kevin Pierdant, wrote that he knew Petitioner had "made a mistake and
19 there are always consequences that you have to pay." (Id. at 5.) Kevin also stated
20 that Petitioner continued to tell him "to not get in trouble and not to make mistakes
21 like he did." (Id.) A letter and a card written by his daughter addressed to Petitioner
22 expressed affection for him. (Id. at 6-12.) Petitioner's aunt, Maria Hernandez,
23 wrote that Petitioner was "not a bad person, he just made a bad choice" which he
24 regrets and accepts responsibility. (Id. at 12.) She stated that given a second
25 chance, Petitioner would return to Mexico to start a new life. (Id.) Lastly,
26 Petitioner's cousin, Noemi Enriquez, wrote that Petitioner was a "very caring person
27 that deserves freedom and to spend time with his family and his children." (Id. at
28 13.) Generally, these letters repeat assertions of Petitioner's remorsefulness and his

good character. However, counsel had already discussed Petitioner's remorsefulness in her statement. See supra at 8. As to the testimonials regarding Petitioner's good character, Respondent argues that they were contradicted by his conduct in the underlying convictions and therefore unlikely to have lowered his sentence. (Ans. at 12-13, citing People v. Burbine, 106 Cal.App.4th 1250, 1263 (2003) (favorable letters do not support a reduced sentence where the "qualities spoken of in letters were contradicted by defendant's conduct in committing crimes"), and People v. Charron, 193 Cal.App.3d 981, 994 (1987) (trial court did not err in rejecting letters testifying to defendant's good character as a mitigating factor when the qualities discussed in the letters were contradicted by the defendant's conduct in underlying convictions).)

Indeed, Petitioner's conduct in the underlying convictions is clearly what influenced the trial court the most as the judge highlighted the "violent nature of the crime" and Petitioner's "wanton disregard for human life" at the resentencing hearing. (RT 9.) Furthermore, the 2009 probation report provided several circumstances in aggravation under California Rules of Court, rule 4.421, which undercut the factors set-forth by counsel in mitigation:

> [Factor](a)(1): ...[T]he crime caused great bodily injury above and beyond that needed to prove the applicable enhancement per 12022.7(a), as [Fent] suffered bullet wound injuries to both legs. Further, we would note the assault was conducted with a degree of callousness, in that while he self-disclosed during the prior probation interview that he purportedly "aimed low" to avoid causing serious injury, he still shot through a closed door, and therefore lacked the ability to verify his intended target, with his girlfriend and their child standing mere feet away. [Factor](b)(1): The [Petitioner] has engaged in violent conduct which indicates a serious danger to society. [Factor](b)(5): The [Petitioner]'s prior performance on probation was unsatisfactory.

(Ans. Ex. C at 38.) The report also referred to the original sentencing report, which remained applicable, wherein several of the other mitigating factors were challenged:

> While it appears that this elevation of criminal severity was a

Order Denying Petition; Denying COA
P:\PRO-SE\EJD\HC.11\06656Morales_denyHC.wpd      10

> gradual build up over the three separate incidents, his own accounts hint at criminal conduct spanning almost a decade. His admitted gang involvement and self reported history of methamphetamine sales since he was a young teenager has gone relatively undetected; however, at the somewhat youthful age of 24 the [Petitioner] has already been convicted of two prior felony offenses and has served a prison term. That he was discharged from parole without incident would otherwise be a marked accomplishment, were it not for the fact that he was also deported to another country the day after his release from state prison.
>
> We view the [Petitioner] as a credible threat to society, given his actions and total submersion within a criminal lifestyle and mentality. The [Petitioner] ultimately chose to commit these acts, and at any time could have desisted from such reckless behavior. Although his claims of shooting the victim were to protect his newborn child and ex-girlfriend, we note that it was these very individuals he placed in harms way, as they were a mere five to eight feet away when the [Petitioner] fired the bullets, blindly, through the door.

(Ans. Ex. A at 472.)

Petitioner has failed to establish that he was prejudiced by counsel's alleged failure to include the letters in support of mitigation. The letters emphasized Petitioner's remorse and his good character, but the former had already been presented by counsel as a mitigating factor and the latter was contradicted by Petitioner's conduct in the underlying crimes. Furthermore, the circumstances in aggravation strongly outweighed – and in fact undercut – the mitigating factors. Lastly, as Respondent points out, Petitioner did in fact obtain a lesser sentence on remand: his original sentence was an indeterminate term of 35 years to life in prison, and he was resentenced to a determinate term of 24 years and eight months. (Ans. at 13.) Based on this record, there is no reasonable probability that the inclusion of the letters would have resulted in a different outcome. See Strickland, 466 U.S. at 694. Accordingly, the state court's rejection of this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. 28 U.S.C. § 2254(d).

### 2. Misstatement That Sentence Enhancements Were Mandatory

Petitioner claims that his attorney provided ineffective assistance because she erroneously informed the trial court that certain sentence enhancement were

mandatory when in fact the court had the discretion to strike them. (Pet. 6.) Respondent asserts that this claim also fails because Petitioner cannot show that he was prejudiced by counsel's error.

On appeal, Petitioner challenged his convictions for shooting at an inhabited dwelling (count X) and for child endangerment (count VII). The California Court of Appeal reversed Petitioner's convictions for shooting an inhabited dwelling and affirmed the judgment in all other respects. At Petitioner's original sentencing, the trial court stayed two on-bail sentence enhancements found true in connection with counts seven and nine. (Ans. Ex. A at 415.) At the resentencing hearing on remand, the trial court imposed the two on-bail sentence enhancements. (RT 10-11.)

Petitioner appealed the imposition of the two on-bail enhancements, claiming the trial court failed to exercise its discretion on whether to strike them. (Ans. Ex. E at 15.) He also claimed counsel was ineffective for characterizing the enhancements as mandatory and urged that but for counsel's deficient performance, there was a reasonable probability that he would have received a lesser sentence. (Id. at 22-23.)

The Court of Appeal rejected this claim, finding there was no indication that the trial court was unaware of its discretion to strike the on-bail enhancements:

> The trial court imposed two out-on-bail enhancements pursuant to section 12022.1. That statute provides in pertinent part: "Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court." (§ 12022.1, subd. (b).) Despite this general mandatory language, the trial court retains discretion to strike or dismiss the enhancement or the additional punishment under section 1385. (*People v. Meloney* (2003) 30 Cal.4th 1145, 1155.) [Petitioner] contends the trial court did not understand that it had discretion to strike the enhancements, and that his counsel's failure to ask the trial court to do so deprived him of effective assistance of counsel.
>
> When [Petitioner] was originally sentenced, the prosecutor noted that the trial court had found [Petitioner] committed the two November 2004, offense while on bail. The trial court responded, "Let me say I'm going to suspend any sentence on the out-on-bail enhancement," and the court minutes indicated that two two-year enhancements were stayed.

Order Denying Petition; Denying COA
P:\PRO-SE\EJD\HC.11\06656Morales_denyHC.wpd    12

> The same judge presided after we remanded the matter to the trial court for resentencing. At a hearing after remand, the prosecutor requested and received a continuance on the ground that the presentence report failed to take into consideration the section 12022.1 enhancements. The People's subsequent resentencing brief noted that the trial court had found two sections 12022.1 out-on-bail enhancements to be true, and went on: "The sentencing report does not consider the enhancements as it should. Accordingly, the [Petitioner]'s aggregate term sentence should be increased four years." [Petitioner]'s statement in mitigation addressed the issue by stating: "The defense does not dispute the prosecution's contention that probation's updated sentencing report... neglected to address the two 'out-on-bail' enhancements per Penal Code § 12022.1. *Because these sentencing provisions are mandatory, the defense has no further comment on them.*" (Italics added.) A revised memorandum prepared by the probation department for resentencing indicated that two section 12022.1 enhancements were found true by the court, but not originally imposed, and went on: "There do not appear to be any factors that would otherwise limit the Court from imposing said enhancements at the present time." During the sentencing hearing, the prosecutor noted that the revised probation report "consider[ed] the 12022.1 out-on-bail enhancements." [FN8] Without commenting on its reasons for doing so, the trial court imposed out-on-bail enhancements in connection with counts VII and IX.
>
>> FN8. The prosecutor had first argued against staying sentence on the three convictions under section 12021, possession of the firearm by a felon, and continued: "So we're hoping the court will not 654 the 12021 counts and the revised probation report goes ahead and considers the 12022.1 out-on-bail enhancements."
>
> [Petitioner]'s argument that the trial court mistakenly believed it did not have discretion to strike the out-on-bail enhancement is based on his counsel's statement that the sentencing provisions were mandatory. Despite this statement, the record as a whole does not persuade us that the trial court was unaware of its discretion to strike the section 12022.1 enhancements. The judge who presided over [Petitioner]'s resentencing also imposed the original sentence, and suspended sentence on the enhancements. Neither the revised probation report nor the prosecutor argued that the enhancements were mandatory, and the trial court gave no indication that it believed it was required to impose the sentence enhancements.
>
> It is will established that "a trial court is presumed to have been aware of and followed the applicable law." (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496 (*Mosley*)), and that "'[a] judgment or order of the lower court is *presumed correct*... and error must be affirmatively shown.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "These general rules concerning the presumption of regularity of judicial exercises of discretion apply to sentencing issues." (*Mosley*, *supra*, 53 Cal.App.4th at p. 496; see also *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527 ["[W]e cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of [its sentencing] discretion."].) This

Order Denying Petition; Denying COA
P:\PRO-SE\EJD\HC.11\06656Morales_denyHC.wpd           13

> record does not show that the court misunderstood the scope of its discretion. We will not presume it did so.
>
> Because we reach this conclusion, we reject [Petitioner]'s contention that the judgment should be reversed because his counsel was ineffective in failing to recognize that the trial court had discretion to strike the section 12022.1 enhancements and in failing to urge the trial court to do so.

(Ans. Ex. G at 5-8.)

Petitioner's claim is without merit. As discussed by the state appellate court, the record does not indicate that the trial court erroneously relied on appointed counsel's misstatement that the out-on-bail enhancement was mandatory in imposing the enhancement sentences. First of all, the trial judge was the same judge who imposed Petitioner's original sentence, in which the same enhancements had been stayed; he was clearly aware in the first instance that it was in his discretion to do so. See supra at 8. Furthermore, neither the prosecutor nor the probation report indicated that the sentence enhancement was mandatory. Rather, the report stated that "[t]here do not appear to be any factors that would otherwise limit the Court from imposing said enhancements at the present time," which indicated that imposition was a discretionary matter. See supra at 13. The same is implied by the prosecutor's statement "we're hoping the court... goes ahead and considers the 12022.1 out-on-bail enhancements." Id. It is not likely that the trial judge would rely solely on defense counsel's misstatement regarding mandatory sentencing in light of indications to the contrary from the probation report and the prosecutor, especially since the latter had a greater interest in a higher sentence. Petitioner has failed to show that but for counsel's deficient performance, it was reasonably probable that the proceedings would have been different. Strickland, 466 U.S. at 694. Accordingly, the state court's rejection of this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. 28 U.S.C. § 2254(d).

///

///

United States District Court
For the Northern District of California

**CONCLUSION**

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

IT IS SO ORDERED.

DATED: 7/18/2014

EDWARD J. DAVILA
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JUAN JOSE MORALES,

        Petitioner,

  v.

P. D. BRAZELTON, Warden,

        Respondent.

Case Number: CV11-06656 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 7/18/2014, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Juan Jose Morales F44043
Pleasant Valley State Prison
P.O. Box 8500
Coalinga, CA 93210

Dated: 7/18/2014

Richard W. Wieking, Clerk
/s/ By: Elizabeth Garcia, Deputy Clerk